UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v

TIOMBE ADERO McELRATH,

    Defendant.
_____/

Case No. 1:07-cr-230

HON. JANET T. NEFF

**SENTENCING MEMORANDUM**

On January 3, 2008, defendant entered a plea of guilty to Count 1 of a three-count Indictment, conspiring to possess with intent to distribute fifty grams or more of cocaine base[1] (crack cocaine). On June 12, 2008, the Court sentenced defendant to 48 months imprisonment with special conditions of financial oversight, substance abuse testing and treatment, and 200 hours of community service.[2] In imposing sentence, the Court determined that a variance from the UNITED STATES SENTENCING GUIDELINES (U.S.S.G.) advisory range was warranted under the sentencing factors in 18 U.S.C. § 3553(a). This memorandum sets forth the Court's specific reasoning for that determination.

---

[1] 21 U.S.C. § 846 and §§ 841(a)(1) and (b)(1)(A)(iii).

[2] At sentencing, the Court granted the government's motion to dismiss Counts 2 and 3.

I. Background and Facts

Defendant Tiombe Adero McElrath is a 34-year-old woman who, along with her cousin, Christopher Tirrell Green, and his cousin, Jimmie Lee Streeter, Jr., was arrested by the Kalamazoo Valley Enforcement Team (KVET) following a controlled drug purchase by a confidential informant. Streeter and Green were known to law enforcement based on their drug trafficking activities. According to the informant, Streeter was known on the streets as a powder cocaine and marijuana dealer. Green was known as a partner of Streeter and a large supplier of cocaine in the Kalamazoo area. Based on their investigation, authorities knew that Streeter resided with defendant at her residence, 759 North Pitcher Street in Kalamazoo, and that Streeter lived at a separate Kickapoo Court address in Kalamazoo. [Presentence Investigation Report (PSIR) 1, ¶¶ 17-19.]

On June 1, 2007, the informant negotiated a purchase of two ounces of cocaine with Streeter for $1250. It was agreed that, of the purchase price, Green would receive $1200 for supplying the crack cocaine and Streeter would received $50 for setting up the transaction. Streeter told the informant that he would have to arrange with Green to get the crack cocaine and so the informant should go to a particular gas station and wait for Green and Streeter. [PSIR ¶ 20.]

Based on their surveillance, authorities observed Green travel with defendant to their North Pitcher Street residence, and both went inside, where Green reportedly retrieved the crack cocaine from his safe in an upstairs bedroom. Green and defendant then left and picked up Streeter at his address, and the three went together to the Sunoco station. Once at the station, defendant went into the station and bought a soda, while Streeter got into the informant's vehicle and completed the sale of 55.45 grams of crack cocaine. [PSIR ¶¶ 21-23, 27.]

After the drug sale, Green and defendant took Streeter back to his residence, and the two of them proceeded to the Secretary of State office, where defendant paid $517 for the registration of Green's 1999 Chevy Tahoe with $400 of pre-recorded money from the earlier drug transaction. When Green and defendant left, the police stopped the vehicle on the basis of outstanding arrest warrants for Green. Green was arrested and a subsequent search of the vehicle revealed marijuana residue. Defendant consented to a search and in her purse, the police found 9.35 grams of crack cocaine. Defendant was also arrested. [PSIR ¶¶ 23-25.]

Following the arrests, the KVET obtained a search warrant and conducted a search of the North Pitcher address. They found $7,453 9.15 grams of crack cocaine inside Green's safe. They also recovered various crack cocaine mixing and distribution paraphernalia. [PSIR ¶¶ 26-27.]

Streeter, Green, and defendant were together charged in a three-count Indictment, and all three entered guilty pleas. In a written statement, defendant admitted to allowing her cousin (Green) "a known drug dealer, to stay in her home, where he stored drugs and money in a safe," and to knowingly register in her name the truck that Green purchased with illegal drug money. [PSIR ¶ 32.]

II.  Applicable Law

The Sentencing Guidelines are the "starting point and the initial benchmark" for federal sentencing. *Gall v. United States,* 128 S. Ct. 586, 596 (2007); *United States v. Thompson,* 515 F.3d 556, 561 (6th Cir. 2008). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall,* 128 S. Ct. at 596; see also *United States v. Moon,* 513 F.3d 527, 538 (6th Cir. 2008). The district court must make an

individualized assessment based on the facts presented and adequately explain its choice. *Gall,* 128 S.Ct. at 597; *Moon,* 513 F.3d at 538. If the court decides that an outside-Guidelines sentence is warranted, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Gall,* 128 S. Ct. at 597. The court must ultimately "impose a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States,* 128 S. Ct. 558, 570 (2007).

### III.  Advisory Guidelines

Under the Sentencing Guidelines, defendant's total Offense Level was 25, with a Criminal History Category of I. The sentencing guidelines range for imprisonment was 57 to 71 months. Defendant was subject to a mandatory minimum sentence of ten years pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A). However, the Probation Department noted that the "safety valve" of 18 U.S.C. §3553(f) applied, pursuant to U.S.S.G. § 5C1.2, the Court must impose a sentence in accordance with the applicable guidelines without regard to the statutory minimum.

At sentencing, the government agreed that the criteria for applying the safety valve were met in this case. 18 U.S.C. §3553(f)(1)-(5). There were no objections to the Probation Department's scoring of the Guidelines or the advisory range as calculated, 57 to 71 months. The Probation Department recommended a sentence at the lowest end of the Guidelines range, 57 months imprisonment.

IV.  Variance

After considering the § 3553(a) factors, the Court concludes that the advisory Guidelines range is greater than necessary to accomplish the goals of sentencing with respect to defendant.  In this case, there is general agreement of all parties concerned that defendant's involvement stems primarily from her association with her cousin Christopher Green.  While that circumstance does not in any way absolve defendant of the crime committed, it is a key consideration that, when coupled with her demonstrated motivation and capability to be a productive citizen and parent, convinces the Court that a minor variance in sentencing is warranted.  After careful consideration of the § 3553(a) factors and the circumstances of the offense and the offender, the Court determines that a sentence of 48 months imprisonment, rather than the recommended 57 months, is warranted.

The § 3553(a) factors include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  . . . the [Guidelines] sentencing range . . .;

(5)  any pertinent policy statement issued by the Sentencing Commission . . .;

(6)  the need to avoid unwarranted sentence disparities . . .; and

    (7)    the need to provide restitution to any victims of the offense. [18 U.S.C. § 3553(a)]

With respect to the first factor, § 3553(a)(1), and the nature and circumstances of the offense, the Court considers that this case involves the delivery of two ounces of crack cocaine, or approximately 55 grams. In relative terms, considering the amount of cocaine involved and that there were no identifiable victims, no weapons, or violence, the offense is not one of the more serious ones to come before the Court. Further, certainly at least with regard to the delivery issue, defendant was the least culpable of those involved. Thus, in terms of seriousness, the offense falls at the lower end of the scale.

Second, in terms of the history and characteristics of the defendant, also considered under § 3553(a)(1), Ms. McElrath has much to be commended. She is a high school graduate. She has a lengthy and consistent record of employment. While her employment has not been lengthy with a particular employer, she nevertheless has been consistently employed since 1995. She has some special training in health care and achieved certification as a nursing assistant. Defendant's history and background reflect a certain amount of skill and motivation to achieve acceptable life goals. She has every indication of being, or least attempting to be, a productive member of society.

Nonetheless, defendant has made some extremely poor choices. She is not merely a victim of circumstance because she knew that there were drugs, and drug money and activities in her home. She almost certainly knew that Green was using her apartment as a venue to process powder cocaine into crack cocaine. She, at the very least, tolerated this illegal activity, despite her obligation to her children, who presumably were living at the North Pitcher address as well.

In the final analysis, defendant's history and characteristics reflect a balance of positive and negative, which in and of itself is a factor in favor of defendant. In these types of cases, there is not always a balance of pluses and minuses.

With regard to the need for the sentence imposed, § 3553(a)(2), the Court considers the need to: (1) reflect the seriousness of the offense; promote respect for the law; and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Court has weighed these factors in the context of this case.

First, the Court observes that punishment is a significant factor here. Defendant admittedly has made decisions that by her own admission were not good decisions, but she made them nonetheless and adhered to them. Defendant has not demonstrated a great respect for the law. She has violated probation on a number of occasions and her response to her own attorney in this case was not timely with respect to preparation of his sentencing memorandum.

Second, deterrence is an important factor in this case. There is a high cost to society that results from the drug culture, and any involvement in this culture, even indirect participation, cannot be countenanced. Defendant's minor-level involvement therefore warrants deterrence.

On the other hand, the need to protect the public from further crimes of the defendant does not seem to be a critical factor in this case. There is general agreement in this case that defendant is not likely to commit further drug offenses on her own.

Nonetheless, defendant does have some lengthy experience with marijuana, which may be addressed through a period of incarceration. There is consequently some need for treatment,

7

although not perhaps significant need, given defendant's history and reported voluntary abstinence during her two pregnancies and while on bond. Considering defendant's background, there is also perhaps a need for educational or vocational training, § 3553(a)(2)(D). The Bureau of Prisons system has programs to address these needs, and the Court has factored these circumstances into its overall sentencing determination.

In imposing sentence, the Court is obligated to consider the § 3553(a) factors in light of the specific offense and the individual offender. In light of all of the above considerations, it is the Court's determination that with regard to this defendant, a term of more than 48 months imprisonment is unwarranted to meet the goals of sentencing. This is a defendant with great potential to further herself given the proper focus and support. Four years of imprisonment is an appropriate term to make the necessary adjustments to her life, if that is the direction defendant chooses to take. Defendant has the guidance and support of family, and particularly, her mother, as defendant acknowledged before the Court at sentencing. These combined factors indicate the potential for a productive, law-abiding, and substance-free lifestyle. Given the specific circumstances of this case, and this offender, a longer term of imprisonment would have a diminishing effect on her return to a productive life and her responsibilities as the parent of her two children, ages 14 and 7. Further, defendant's mandatory lengthy term of supervised release provides an additional opportunity to monitor defendant's compliance and progress in satisfying court-ordered conditions and securing gainful employment.

Accordingly, for the reasons stated above and on the record at the June 12, 2008 sentencing hearing, the Court determines that a sentence of 48 months' imprisonment is sufficient, but not greater than necessary to advance the goals of sentencing under § 3553(a)(2). The Court

recommends to the Bureau of Prisons that (1) defendant be afforded substance abuse treatment and counseling, and (2) defendant receive educational and vocational training.  Following her term of imprisonment, defendant shall serve a term of five years of supervised release.  Defendant shall also perform 200 hours of community service.  Defendant is ordered to pay a mandatory special assessment of $100.  Other sentencing conditions appear in the accompanying judgment of sentence.

Date: June 25, 2008.                               /s/ Janet T. Neff
                                                                    JANET T. NEFF
                                                                    United States District Judge